114 Cal.Rptr.2d 499 (2001)
94 Cal.App.4th 573
In re MARK L., a Person Coming Under the Juvenile Court Law.
San Diego County Health and Human Services Agency, Plaintiff and Respondent,
v.
Paul L., Defendant and Appellant.
Paul L. et al., Petitioners,
v.
The Superior Court of San Diego County, Respondent;
San Diego County Health and Human Services Agency, Real Party in Interest.
Nos. D037827, D038425.
Court of Appeal, Fourth District, Division One.
December 13, 2001.
*501 Alice C. Shotton, under appointment by the Court of Appeal, and Maryann M. Milcetic, San Diego, for Defendant and Appellant.
John J. Sansone, County Counsel, Susan Strom, Gary C. Seiser and Michelle Neumann-Ribner, Deputy County Counsel, for Plaintiff and Respondent.
Julie E. Braden, under appointment by the Court of Appeal, San Diego, for Minor in No. D037827.
Kathleen Murphy Mallinger; Timothy A. Chandler, Alternate Public Defender, and Roberto Quinones, Deputy Alternate Public Defender, for Petitioner John l.
Timothy A. Chandler, Alternate Public Defender, Erika Hiramatsu and Enriqueta Rico, Deputy Alternate Public Defenders, for Petitioner Mary l.
No appearance for Respondent.
John J. Sansone, County Counsel, Susan Strom, Gary C. Seiser and Michelle Neumann-Ribner, Deputy County Counsel, for Real Party in Interest.
Steven J. Carroll, Public Defender, Jo Pastore and Armando Salazar, Deputy Public Defenders, for Minor in No. D038425.
Certified for Partial Publication.[1]
*500 McDONALD, J.
Paul L. appeals a juvenile court order made at the six-month hearing denying him visitation with his son, Mark l. We affirm the order because the court's finding that visitation would be detrimental to Mark at that time is supported by substantial evidence. However, we are persuaded by Paul's contention that the court erred by determining at the six-month hearing that Mark's invocation of the psychotherapist-patient privilege under Welfare and Institutions Code § 317, subdivision (f)[2] precluded his therapist from providing the court or the San Diego County Health and Human Services Agency (the Agency) with any information between the six-and 12-month hearings regarding Mark's progress in therapy or the propriety of conjoint therapy or visitation between him and Paul.
Additionally, Paul and Mary L. separately seek writ review of the court's order made at the 12-month hearing terminating reunification services and scheduling a selection and implementation hearing. (§ 366.26, subd. (b); Cal. Rules of Court, rule 39.IB.) After a review on the merits, we grant Paul's writ petition on the ground he was denied reasonable reunification services between the six-and 12-month hearings based on the court's misinterpretation of the psychotherapist-patient privilege in the context of juvenile dependency proceedings. We deny Mary's writ petition because she suffered no prejudice. At the 12-month hearing she was not in compliance with the drug treatment component of her reunification plan and there is substantial evidence that return of Mark to her custody would have been detrimental to him.

FACTUAL AND PROCEDURAL BACKGROUND
Paul and Mary are the adoptive parents of Mark and Tasha, who are now 12 and 16 years of age, respectively.[3] During a November 1997 altercation between Tasha *502 and her parents, Paul hit her on the head with a pot and stabbed her in the hand with a pair of scissors. The Agency took Tasha and Mark, who did not witness the incident, into protective custody and filed dependency petitions on their behalf. The proceedings were dismissed as to Mark in January 1998, presumably because Paul was out of the home. Paul was convicted of willful cruelty and corporal injury to a child (Pen.Code, §§ 273a, subd. (a); 273d, subd. (a)) and sentenced to five years' probation. He was not allowed to contact Mark or Tasha unless visitation was ordered by the family court.
In May 2000 the Agency took Mark and Tasha into protective custody because of Mary's drug abuse, sexual abuse of Tasha by Mary's live-in boyfriend and domestic violence between Mary and her boyfriend. The Agency filed a petition on behalf of Mark under section 300, subdivisions (b) and (j).[4] Mark was placed with his biological maternal aunt. The social worker contacted Paul, who said "he would like to play a role in the lives of his children."
The Agency devised case plans for Mary and Paul focusing on supervised visitation, the development of parenting skills, drug rehabilitation, an evaluation of Mary's psychological condition and counseling between the parents and Mark as directed by the Agency. The court ordered the parents to comply with their case plans and Mary to attend the Substance Abuse Recovery Management System (SARMS) program for drug treatment and testing. The court ordered individual therapy for Mark and conjoint therapy between him and Mary if recommended by his therapist.
A contested six-month review hearing was completed in March 2001. Mark had been in individual therapy with Dr. Thomas Keller since July 2000. Mark objected to any testimony of Dr. Keller on the ground that under section 317, subdivision (f) he is the holder of the psychotherapist-patient privilege. The court determined the privilege existed and "we're not going to have any information about what is going on in the therapy...." The court excluded Dr. Keller's testimony and struck references in the Agency's reports to information he provided the social worker.
Mark testified he did not want to visit or have conjoint therapy with Paul. Mark said Paul was mean and beat him when he was five and six years old and he was "still afraid" of Paul. Mark explained he once told the social worker he was curious about Paul and wanted to visit with him, but he changed his mind because he "remembered all the things [Paul had] done to [him] in the past" and "was afraid." Mark testified he would be afraid of Paul even in a supervised setting. Mark wanted to continue weekly supervised visits with Mary.
Social worker Regina Lowry confirmed that Mark initially told her he wanted to visit with Paul, but changed his mind within about a week. When asked whether she would arrange for conjoint therapy between Paul and Mark without the consent of Dr. Keller, Lowry responded, "It would be ideal to have a therapist agreement."
The court continued Mark in his placement with his biological maternal aunt. It found that Paul and Mary had progressed with their case plans, but there was clear and convincing evidence that visitation with Paul would be detrimental to Mark "absent a change of circumstances." It *503 ordered conjoint therapy between Mark and Paul and Mark and Mary when approved by Dr. Keller and with the concurrence of Mark's counsel. The court noted, "I don't have evidence before me to indicate that the conjoint therapy would ... be appropriate." The court assumed Mark's counsel would advise the Agency if Dr. Keller determined conjoint therapy to be appropriate because the Agency was precluded by the psychotherapist-client privilege from obtaining information directly from Mark or Dr. Keller.
A contested 12-month review hearing was held on July 27, 2001. Paul was in compliance with his case plan and the conditions of his probation. Mary had not attended SARMS or submitted to drug screening since May 2001 and a contempt citation was issued for her noncompliance with the program. Mark visited Mary only once after the six-month review hearing because he decided he no longer wanted contact with her.
Lowry testified that Mark still objected to any contact with Paul and was "adamant that he does not want to return home." Lowry explained that her inability to communicate with Dr. Keller between the six-and 12-month review hearings impeded her ability to gather information regarding Mark's progress and make an informed recommendation regarding conjoint therapy between him and Paul. The court also lamented the inability to obtain any information from Dr. Keller. The court declined Paul's request that it reconsider its ruling on the scope of the psychotherapist-client privilege.
The court determined by clear and convincing evidence that Mary and Paul had been offered reasonable reunification services, and there was no likelihood of Mark's return to either of them by the 18-month date. The court found that Paul "has done everything he can toeverything we have asked him to do," but "there is detriment because Mark does not want to go home." The court set a selection and implementation hearing under section 366.26.

DISCUSSION

I

PAUL'S APPEAL

A
Paul challenges the sufficiency of the evidence to support the court's order at the six-month review hearing denying him visitation with Mark. Visitation between a dependent child and his or her parents is an essential component of a reunification plan, even if actual physical custody is not the outcome of the proceedings. (In re Luke L. (1996) 44 Cal.App.4th 670, 679, 52 Cal.Rptr.2d 53.) Visitation "shall be as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) However, "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) It is ordinarily improper to deny visitation absent a showing of detriment. (In re Luke L., supra, 44 Cal.App.4th at p. 679, 52 Cal.Rptr.2d 53; In re David D. (1994) 28 Cal.App.4th 941, 954, 33 Cal.Rptr.2d 861.)
The court found by clear and convincing evidence that visitation with Paul would be detrimental to Mark. "`"The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine, and if there is substantial evidence to support its conclusion, the determination is not open to review on appeal." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear and convincing evidence, `the clear and convincing test disappears ... *504 [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (Sheila S. v. Superior Court (2000) 84 Cal.App.4th 872, 880-881, 101 Cal.Rptr.2d 187.)[5] "We have no power to judge the effect or value of the evidence, to weigh the evidence [or] to consider the credibility of witnesses...." (In re Casey D. (1999) 70 Cal.App.4th 38, 52-53, 82 Cal.Rptr.2d 426.)
We conclude the court's denial of visitation between Paul and Mark is supported by substantial evidence. When the six-month review hearing ended in March 2001, Mark had not lived with or visited Paul for more than three years. Mark unequivocally testified he feared Paul because of physical abuse and would be uncomfortable in his presence even if accompanied by a third party. In an earlier written submission, Mark stated he had "vivid memories" of being physically abused by Paul and Paul once "pick[ed] him up and [threw] him across a room." Mark also stated he saw Paul abuse Tasha. This constitutes evidence of detriment "reasonable in nature, credible, and of solid value...." (Estate of Teed (1952) 112 Cal.App.2d 638, 644, 247 P.2d 54.) The focus of dependency law is on the well-being of the child, and we do not fault the court for determining forced contact with Paul may harm Mark emotionally. (See In re Joseph B. (1996) 42 Cal.App.4th 890, 901, 49 Cal.Rptr.2d 900; In re Danielle W. (1989) 207 Cal.App.3d 1227, 1238-1239, 255 Cal.Rptr. 344.)

B
We agree with Paul, however, that the court misinterpreted section 317, subdivision (f) to preclude Dr. Keller from testifying or providing any information to the court or the Agency at the six-month hearing. Paul was not prejudiced by the error because the order denying visitation is otherwise supported by substantial evidence.[6] However, Paul was prejudiced at the 12-month hearing by the absence of information from Dr. Keller regarding any therapeutic progress or changed circumstances between the six- and 12-month hearings that might have made conjoint therapy or visitation appropriate and facilitated reunification.
It is established that the psychotherapist-patient privilege applies to the relationship between a dependent child and his or her therapist. (In re Daniel C.H. (1990) 220 Cal.App.3d 814, 828-829, 269 Cal.Rptr. 624; In re Eduardo A. (1989) 209 Cal.App.3d 1038, 1041-1043, 261 Cal.Rptr. 68; Evid.Code, §§ 1010 et seq.) "[T]he purpose of the privilege is to protect the privacy of a patient's confidential communications to his [or her] psychotherapist. [Citations.]" (In re Daniel C. H., supra, 220 Cal.App.3d at p. 826, 269 Cal. Rptr. 624.)
Under Evidence Code section 1013, the holder of the psychotherapist-patient privilege *505 is "[t]he patient when he [or she] has no guardian or conservator" or a "guardian or conservator of the patient when the patient has a guardian or conservator." (Evid.Code, § 1013, subds.(a), (b).) Historically, the social worker in a dependency case was the child's guardian ad litem. (Former § 326, repealed by Stats.2000, ch. 450, § 2, July 1, 2001.) According to the Agency, "[c]ommunication between children's therapists and social workers was, understandably, the norm. Indeed, if the social worker [did not] communicate with the child's therapist, and vice versa, the court would rightfully have been concerned. That communication between the child's therapist and the social worker was used in reports to the court at review and other hearings.... [I]nput from children's therapists has played a vital role in helping both the Agency and the juvenile court make decisions regarding the safety and welfare of dependent children."
However, section 326 was repealed effective July 1, 2001. (Stats.2000, ch. 450, § 2.) The Legislature added section 326.5, which provides that a dependent child's guardian ad litem "may be an attorney or a court-appointed special advocate...." The legislative history shows the Legislature sought to make federal funding available in dependency actions, by complying with the requirement that the child's guardian ad litem be an attorney or court-appointed special advocate. It was noted that "California is one of only three states that currently allow[ ] the child to be represented by the same individual who represents the petitioning agency." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2160 (1999-2000 Reg. Sess.) as amended April 25, 2000, p. 6.)
The Legislature also amended section 317, subdivision (f), effective January 1, 2001, to provide that a dependent child who is "of sufficient age and maturity to so consent, may invoke the psychotherapist-client privilege...." [7] "This provision is intended to ensure that in cases where the child is a dependent of the court due to abuse or neglect at the hands of the child's parent or guardian, [ ] the parent or guardian cannot shield his or her behavior from scrutiny by keeping damaging information hidden from view under the guise of exercising the child's privilege of confidentiality. Absent such amendment, it appears, under the provisions of the Evidence Code, that the parent or guardian would otherwise be the holder of the privilege." (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 2160 (1999-2000 Reg. Sess.) as amended April 25, 2000, p. 7.)
Section 317, subdivision (f) designates the holder of the psychotherapist-patient privilege, and does not affect substantive law on the privilege. Paul contends and the Agency agrees that notwithstanding Mark's assertion of the privilege, the court should have permitted Dr. Keller to divulge limited information from which an informed decision on future conjoint therapy or visitation could be made. They rely on Evidence Code section 1012, which defines "`confidential communication between patient and psychotherapist'" as "information, including information obtained by an examination of the patient, *506 transmitted between a patient and his [or her] psychotherapist in the course of that relationship and in confidence by a means [that], so far as the patient is aware, discloses the information to no third persons other than those who are present to further the interest of the patient in the consultation, or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the psychotherapist is consulted ...." (Italics added.)
In In re Pedro M. (2000) 81 Cal.App.4th 550, 96 Cal.Rptr.2d 839, a juvenile delinquency case, the court relied on Evidence Code section 1012 in holding the trial court did not err by admitting testimony of the minor's therapist after he invoked the psychotherapist-patient privilege. The court explained: "Quite obviously, the court's ability to evaluate [the minor's] compliance with [a] condition of the court's disposition order and its effect on his rehabilitation would be severely diminished in the absence of some type of feedback from the therapist, and it would be unreasonable for [the minor] to think otherwise. [Citations.]" (Id. at p. 554, 96 Cal.Rptr.2d 839.) The court noted "the juvenile court carefully sought to circumscribe [the therapist's] testimony `so that the details of the therapeutic session [would] not [be] disclosed.' As a consequence, no testimony was admitted regarding any specific statements [the minor] had made to [the therapist], any advice given to [the minor] by [her], or any diagnosis made by [her]. Under the circumstances, ... the psychotherapist-patient privilege did not preclude [the therapist] from testifying ... concerning [the minor's] participation and progress in the court-ordered treatment plan." (Id. at pp. 554-555, 96 Cal.Rptr.2d 839; see also In re Daniel C. H., supra, 220 Cal.App.3d at pp. 829-830, 269 Cal. Rptr. 624 [court indicated minor's therapist could give limited testimony despite child's assertion of psychotherapist-patient privilege].)
The rationale of In re Pedro M. is applicable in the juvenile dependency context, in which therapy has a dual purpose treatment of the child to ameliorate the effects of abuse or neglect and the disclosure of information from which reasoned recommendations and decisions regarding the child's welfare can be made. As the Supreme Court has observed, "[w]ithout the testimony of psychologists, in many juvenile dependency and child custody cases superior courts and juvenile courts would have little or no evidence, and would be reduced to arbitrary decisions based upon the emotional response of the court." (In re Jasmon O. (1994) 8 Cal.4th 398, 430, 33 Cal.Rptr.2d 85, 878 P.2d 1297.)
We conclude the psychotherapist-patient privilege protects Mark's confidential communications and details of the therapy, but does not preclude Dr. Keller from giving circumscribed information to accomplish the information-gathering goal of therapy. (Evid.Code, § 1012; In re Pedro M., supra, 81 Cal.App.4th at pp. 554-555, 96 Cal.Rptr.2d 839; In re Daniel C. H., supra, 220 Cal.App.3d at pp. 829-830, 269 Cal.Rptr. 624.) Without communication from Dr. Keller, neither the Agency nor the court learned whether any therapeutic progress between the six- and 12-month hearings warranted conjoint therapy or visitation between Mark and Paul.[8] The *507 legislative history of section 317, subdivision (f) does not suggest the Legislature intended to make unavailable that important information. Moreover, the court's reliance on Mark's counsel to ascertain and divulge information from Dr. Keller created a potential conflict of interest. Mark's counsel's opinion regarding contact with Paul may vary from Mark's opinion, and under section 317, subdivision (f) counsel is bound to follow the direction of his client.

II

PAUL'S PETITION
Generally, a parent is entitled to 12 months of reunification services when the child is at least three years of age on the date of removal from parental custody. (§ 361.5, subd. (a)(1).) The juvenile court shall not refer a case to a permanency planning hearing unless it has been shown by clear and convincing evidence that reasonable services have been provided. (§ 366.21, subd. (g).)
We agree with Paul's contention that substantial evidence does not support the court's finding he received reasonable reunification services between the six- and 12-month review hearings. The court ordered conjoint therapy between Mark and Paul if recommended by Dr. Keller, and left open the possibility of visitation based on changed circumstances, but precluded Dr. Keller from communicating with it or the Agency. As a result, the potential for contact between Paul and Mark was essentially thwarted, absent a request by Mark. Without information from Dr. Keller, the court was unable to determine whether Mark's return to Paul's custody would be detrimental to him.
At the 12-month review hearing, the court is required to extend the time for reunification services for up to an additional six months if reasonable services have not been provided to the parent. (In re Daniel G. (1994) 25 Cal.App.4th 1205, 1212, 31 Cal.Rptr.2d 75; § 361.5, subd. (a).) Paul is entitled to an additional six months of reunification services.[9]

III[*]

DISPOSITION
The order made at the six-month review hearing denying visitation between Mark and Paul is affirmed.
Let a writ issue directing the superior court to vacate its order terminating reunification services for Paul and setting a section 366.26 permanency planning hearing, and enter a new order providing him with six additional months of reunification services. The stay issued November 19, 2001, in case No. D038425 is vacated. This decision is final immediately as to this court. (Cal. Rules of Court, rule 24(d).)
Mary's petition is denied.
WE CONCUR: HUFFMAN, Acting P.J., and McINTYRE, J.
NOTES
[1] Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part III.
[2] Statutory references are to the Welfare and Institutions Code unless otherwise specified.
[3] Tasha is not involved in this appeal.
[4] Juvenile court jurisdiction under subdivision (b) of section 300 is based on the parents' failure or inability to adequately care for the children, with resulting harm or substantial risk of harm to them. Juvenile court jurisdiction under subdivision (j) of section 300 is based on abuse to a child's sibling and substantial risk of harm to the child.
[5] In In re Manolito L. (2001) 90 Cal.App.4th 753, 761-762, 109 Cal.Rptr.2d 282, the court held that a preponderance of the evidence test applies to the determination of whether visitation would be detrimental to the child. Whether the test at the trial court is preponderance of the evidence or clear and convincing evidence, a substantial evidence standard of review applies on appeal. (Sheila S. v. Superior Court, supra, 84 Cal.App.4th at pp. 880-881, 101 Cal.Rptr.2d 187; In re Corey (1964) 230 Cal.App.2d 813, 823-824, 41 Cal. Rptr. 379.)
[6] The information the court struck from the Agency's reports at the six-month review hearing was unhelpful to Paul. Dr. Keller initially reported that Mark did not mention Paul in therapy, and later reported that Mark did not want any contact with Paul.
[7] Section 317, subdivision (f) provides in part: "Either the child or the counsel for the child, with the informed consent of the child if the child is found by the court to be of sufficient age and maturity to so consent, may invoke the psychotherapist-client privilege, physician-patient privilege, and clergyman-penitent privilege; and if the child invokes the privilege, counsel may not waive it, but if counsel invokes the privilege, the child may waive it. Counsel shall be holder of these privileges if the child is found by the court not to be of sufficient age and maturity to so consent...."
[8] The court could have appointed another psychologist to examine and evaluate Mark, and under Evidence Code section 1017 there is no psychotherapist-patient privilege when the examination is by court order. (In re Eduardo A., supra, 209 Cal.App.3d 1038, 1044, 261 Cal.Rptr. 68.) The court, however, has reasonable discretion in the appointment of expert witnesses. (In re Steven A. (1993) 15 Cal.App.4th 754, 763, 19 Cal.Rptr.2d 576.)
[9] We are not required to reach Paul's alternative theory that the court violated his constitutional rights by denying his request to have Mark testify at the 12-month review hearing.
[*] See footnote 1, ante.