Filed 3/26/13  In re April A. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re APRIL A., a Person Coming Under the Juvenile Court Law. | |
| | D062401 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. EJ3303) |
| v. | |
| DULCE G. et al., | |
| Defendants and Appellants. | |

APPEALS from a judgment of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Dulce G. and Andres A. (the parents) appeal following the dispositional hearing in the dependency case of their daughter, April A.  Dulce, joined by Andres, challenges the juvenile court's order removing April from Dulce's custody.  We affirm.

BACKGROUND

The parents' history of domestic violence began before April was born. In 2008, when the parents' son Dominic was one year old, Dulce agreed to obtain a restraining order against Andres and have contact with him only for visitation purposes. The parents continued living together and the violence continued. In 2010, the San Diego County Health and Human Services Agency (the Agency) opened a dependency case for Dominic. April was born in April 2011, while the parents were receiving reunification services in Dominic's case. In April 2012, Dominic was returned to Dulce. Dulce lived with April and Dominic (the children) in the maternal grandmother's home.

On May 22, 2012, social worker Liliana Castillo interviewed Dominic. Dominic said he used to live in his grandmother's home, but now lived in his grandfather's home. Dominic slept on a sofa, and the parents slept in a bed with April. On Saturday the parents fought in the bathroom, and then Dulce emerged with blood on her arm. On Wednesday Dominic heard the parents use "bad words" and heard slapping noises.

Castillo interviewed the maternal grandmother. The maternal grandmother said that on Sunday May 20, 2012, Dominic seemed sad. When she asked him what was wrong, he said his parents had told him not to say anything. Dominic then revealed that Andres hit and kicked Dulce; that morning, Dominic heard Dulce struggling to breathe and asking Andres to let her go; and April cried. When the maternal grandmother confronted Dulce, Dulce accused Dominic of lying. The previous week, Dominic told the maternal grandmother that the parents argued in the bathroom and Dulce was bleeding when she came out. The maternal grandmother said Andres lived in the paternal

2

grandfather's home, and Dulce had moved out of the maternal grandmother's home and lived with Andres.

The maternal grandmother told Castillo she was concerned about a burn on April's leg. Castillo examined April and found extensive healing burn marks on her lower legs and feet. The maternal grandmother said that while babysitting the children, she noticed the burn marks and asked Dominic about them. Dominic said the parents told him not to talk about the matter, but eventually revealed that the parents put rubbing alcohol on April's legs, and it caught fire while the parents were trying to heat alcohol in a dish. When the maternal grandmother asked Dulce about the burns, Dulce said that while the parents were heating the alcohol, the alcohol on April's legs caught fire, and Dulce extinguished the flame by putting April's legs in the toilet. When the maternal grandmother scolded Dulce for not taking April to a doctor, Dulce said Andres had instructed her not to. The maternal grandmother believed the parents did not take April to a doctor because they did not want the Agency to find out they were living together. The maternal grandmother said she did not want the children removed from the parents, but she cared deeply for the children and wanted them to be safe.

Castillo transported the children to Polinsky Children's Center (Polinsky) and asked Dominic about April's burns. Dominic said April had alcohol on her legs, the alcohol caught fire and the parents did not take April to a doctor because Dulce was scared. At Polinsky, a doctor examined April and concluded the burn was likely quite painful when sustained, and could have become infected. The doctor stated that the

3

parents' failure to seek medical care constituted medical neglect and the injuries were highly suspicious for physical abuse.

On May 23, 2012, Castillo interviewed the paternal grandfather. The paternal grandfather said the parents had been living in his home for the past four or five months. The parents shared a bedroom. When April was burned, the paternal grandfather told the parents to take her to the hospital, but the parents said if they did, she would be taken away. Dulce told the paternal grandfather that she was concerned the maternal grandmother was inducing Dominic to lie.

On May 25, 2012, the Agency filed a petition for one-year-old April. (Welf. & Inst. Code, § 300, subd. (b); all further statutory references are to this code.) The petition was based on the continuing domestic violence and Dulce's failure to seek medical care for April's burns.

Castillo spoke with the parents several times before and after the petition was filed. The parents claimed Dominic was lying and the maternal grandmother had coached him. The parents denied any recent domestic violence, denied maintaining a romantic or sexual relationship and initially denied living together. Dulce said she lived with the maternal grandmother. Andres said he stayed at the home of his friend Sergio, but was unable to provide an address, and said Dulce lived at the paternal grandfather's home. Later, Andres said that Dulce had moved into the paternal grandfather's home, and Andres sometimes slept there, in a bedroom separate from Dulce's. Dulce later said she had moved into the paternal grandfather's home because the maternal grandmother had evicted her. The parents claimed Dulce was not present when April was burned, and

4

Dulce admitted she lied when she told the maternal grandmother otherwise. The parents minimized the seriousness of the burns, and stated they did not take April to a doctor because they believed she would be removed from their care.

After their detention at Polinsky, the children were moved to the maternal grandmother's home. On June 7, 2012, Castillo interviewed Dominic again. Dominic denied that the maternal grandmother told him what to say. During a forensic interview, Dominic said he had seen Andres hit Dulce on the face; the parents fought "all the time"; Andres "burned [April]'s little legs [with alcohol]"; and April "cried a lot."

The jurisdictional and dispositional hearing took place on July 24, 2012. Castillo testified regarding the content of her reports, summarized above. The parents testified there had been no domestic violence for more than two years; they did not live at the paternal grandfather's house at the same time; and the paternal grandfather believed Andres lived there because Andres spent time there. The parents testified Dominic and the maternal grandmother were lying.

The court found the parents were not credible, Dominic's reports of domestic violence were credible, the maternal grandmother had no ulterior motive and it was reasonable to conclude the parents were living together in the paternal grandfather's home. The court stated the parents did not take April to the hospital because they had something to hide.

The court entered true findings on the petition. The court found, by clear and convincing evidence, there was a substantial danger to April's physical health, safety, protection, or physical or emotional well-being; or there would be such a danger if she

5

were returned home; and removal was the only reasonable means of protecting her physical health (§ 361, subd. (c)(1)). The court removed April from the parents' custody and ordered her placed in a relative's home.

## DISCUSSION

Before a child can be removed from parental custody, the Agency must prove, by clear and convincing evidence, "[t]here is or would be a substantial danger to [her] physical health, safety, protection, or physical or emotional well-being . . . if [she] were returned home" and removal is the only reasonable means of protecting her physical health. (§ 361, subd. (c)(1).) "The court shall consider, as a reasonable means to protect the minor, the option[s] of removing an offending parent . . . from the home [and] allowing a nonoffending parent . . . to retain physical custody as long as that parent . . . presents a plan acceptable to the court demonstrating that . . . she will be able to protect the child from future harm." (*Ibid.*) "The parent need not be dangerous and the minor need not have been actually harmed before removal is appropriate. The focus . . . is on averting harm to the child." (*In re Diamond H*. (2000) 82 Cal.App.4th 1127, 1136.) " '[P]ast conduct may be probative of current conditions' if there is reason to believe that the conduct will continue." (*In re S.O*. (2002) 103 Cal.App.4th 453, 461.)

On appeal Dulce has the burden of showing there is no substantial evidence justifying removal. (*In re Diamond H., supra,* 82 Cal.App.4th at p. 1135.) " ' "The sufficiency of evidence to establish a given fact, where the law requires proof of the fact to be clear and convincing, is primarily a question for the trial court to determine . . . ." [Citations.]' [Citation.] Thus, on appeal from a judgment required to be based upon clear

6

and convincing evidence, 'the clear and convincing test disappears . . . [and] the usual rule of conflicting evidence is applied, giving full effect to the respondent's evidence, however slight, and disregarding the appellant's evidence, however strong.' [Citation.]" (*Sheila S. v. Superior Court* (2000) 84 Cal.App.4th 872, 880-881, quoted in *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581.) "We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts." (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)

Dulce's arguments border on frivolous. She argues there was no evidence she ever harmed April and the burns were accidental, the result of an isolated incident. This argument misses the point: Dulce failed to seek medical treatment for April's serious burns. Moreover, substantial evidence supports the conclusion that Dulce was living with Andres and the domestic violence continued. "[V]iolence in the same household where children are living . . . is a failure to protect [the children] from the substantial risk of encountering the violence and suffering serious physical harm or illness from it." (*In re Heather A.* (1996) 52 Cal.App.4th 183, 194.)

Dulce also argues the court failed to consider reasonable alternatives to removal, such as ordering Andres to remain out of the home, limiting his contact with Dulce and April and providing Dulce family maintenance services. This argument ignores the court's credibility findings, which we will not second guess, and its conclusion, based on substantial evidence, that after receiving 18 months of services in Dominic's case, Dulce moved in with Andres, in violation of the court orders, and lied repeatedly. Substantial

evidence supports the finding that removal was the only reasonable means of protecting one-year-old April.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:


BENKE, Acting P. J.


AARON, J.