Filed 1/17/14  In re B.C. CA3

## NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

| | |
|---|---|
| In re B.C. et al., Persons Coming Under the Juvenile Court Law. | C073732 |
| SHASTA COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>R.C.,<br><br>Defendant and Appellant. | (Super. Ct. Nos. 12JVSQ2950501 & 12JVSQ2952001) |

R.C., father of the minors, appeals from the juvenile court's dispositional judgment.  (Welf. & Inst. Code, § 395.)[1]  He contends the juvenile court erred by constraining the minors from sending letters to him without first making a finding of detriment.  We agree and remand for the juvenile court to make further findings and orders.

---

[1]    Further undesignated statutory references are to the Welfare and Institutions Code.

BACKGROUND

Father has a lengthy criminal history. In 2005 minors B.C. (born in 1997) and P.C. (born in 1998) were detained due to father's arrest for making threats, brandishing a weapon, and being under the influence of a controlled substance. Father was physically combative with law enforcement officers and made threats in the presence of the minors. Reunification services were offered to father but not mother, as she had previously failed to reunify and lost parental rights to other children. The minors were placed in guardianship with the paternal grandmother. The grandmother returned the minors to father shortly after his release from prison.

On November 6, 2012, Shasta County Health and Human Services Agency filed a section 300 petition on behalf of the minors alleging father was physically abusive to B.C. by choking and hitting her in the head, leaving marks on her face and neck. While being arrested for this incident, father yelled obscenities at the minors and blamed them for his arrest and inevitable incarceration. The petition further alleged that father has a history of being physically abusive to both minors, as evidenced by the history of referrals and cases with child welfare agencies. The petition also alleged that father has substance abuse and anger control problems that have caused the minors emotional harm and place the minors at risk of further physical and emotional harm. Finally, the petition alleged that the guardian was unable or unwilling to protect the minors from father's abuse and neglect and that mother had lost custody of these children, as well as two others, due to her mental health and substance abuse problems.

At the November 7, 2012, detention hearing, the juvenile court denied father visitation, finding clear and convincing evidence that visitation would be detrimental to the physical and emotional well-being of the minors. Minor, P.C., addressed the court and requested he be allowed to have written communication with father. The juvenile court advised that it would permit the minor to write to father and provide the letters to the social worker who would, in turn, have the discretion to deliver the letters to father if

2

deemed appropriate, but informed the minor that the criminal court had entered a no-contact order which prevented father from being able to correspond in return.[2]

The combined jurisdiction/disposition hearing took place on May 2, 2013. The juvenile court sustained the allegations in the petition and declared the minors dependent children of the court, terminated the paternal grandmother's legal guardianship, and ordered the minors placed in out-of-home care. The juvenile court ordered no reunification services for mother. The juvenile court ordered reunification services be provided to father but maintained the detriment finding with respect to the visitation between the father and the children. The juvenile court further explained that father would need to seek modification of the criminal court's no-contact order before it would lift the detriment finding and permit limited therapeutic visitation.

With respect to letter contact with father, the following discussion took place:

"MR. BARULICH [3]: Your Honor, on behalf of [P.C.],[4] he wanted the Court to know that they were unaware of any restrictions with respect to contact with his dad. And actually, approached [minors' counsel] and asked him what to do with letters. Apparently, [minors' counsel] was not aware of the no-contact orders either. So [P.C.] mailed the letters to the jail at [minors' counsel's] direction. So he just wanted to let the Court know there was nothing -- anything intentionally -- anything done on his part, to violate any kind of no-contact orders out of the criminal court.

---

[2]     The minors subsequently sent letters directly to the jail without the social worker's knowledge.

[3]     Mr. Barulich specially appeared on behalf of minors' counsel.

[4]     It is unclear from the record whether the individual to which Mr. Barulich refers is the minor, P.C., or his paternal uncle, P.C., as they share the same name.

"THE COURT: Okay. I didn't think that. I just don't feel at this time it is appropriate for me to allow the social worker to pass on your letters when there is that no-contact order. Okay?

"So if you want to continue to write the letters, you're fine. I just ask that you not mail them to your father in violation of any orders of the criminal court.

"MINOR [B.C.]: Okay. Is he going to get in trouble since we didn't know and since --

"THE COURT: No, he's not going to get in trouble.

"MINOR [B.C.]: -- we contacted him?

"THE COURT: He's not going to get in trouble.

"PATERNAL UNCLE: That wasn't addressed in the hearing that the kids were allowed to write to him. He just can't write to them.

"THE COURT: Okay. And the person speaking is the --

"PATERNAL UNCLE: Uncle.

"THE COURT: Paternal uncle to the children. And your name, sir, again?

"PATERNAL UNCLE: [P.]

"THE COURT: I'm sorry. [P.] Thank you.

"And that's true. He's not going to get in trouble. I don't feel that it would be appropriate for me to allow the social worker to get that contact when the criminal court has ordered no contact. It is a form of contact.

"I'm not saying he's going to get in trouble for it. I'm just saying I don't think it's appropriate for this Court to permit it in light of the order out of the criminal court. So that's why I'm not going to allow the social worker to forward that mail on. I'm not saying the kids can't write, they can keep those letters. If there is a change in the criminal court order and you're allowed to pass those on to your father or it would be appropriate to pass those on, then we'll talk about that and we can do that.

4

"So I've given an instruction to [father's counsel] how to, in essence, resolve the visitation issues, but he's going to have to start with the criminal court. Okay?"

DISCUSSION

Father contends it was error for the juvenile court to order no-contact via letters from the minors without a determination of detriment or risk to the safety or well-being of the minors. We agree.

"In order to maintain ties between the parent . . . and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent," an order placing a child in foster care and ordering reunification services must include an order regarding visitation. (§ 362.1, subd. (a); see also *In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1008.) Such visitation must be "as frequent as possible, consistent with the well-being of the child." (§ 362.1, subd. (a)(1)(A).) However, the court may deny a parent visitation or otherwise craft appropriate orders for limited parent-child contact if visitation would be harmful to the child's well-being since "[n]o visitation order shall jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(B).) "It is ordinarily improper to deny visitation absent a showing of detriment." (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580.)

In this case, the juvenile court initially limited visitation to supervised letter contact from minors to father. Due to the criminal no-contact order, however, it was made clear that father could not respond to the letters. At the disposition hearing, however, the juvenile court ordered that letters written by the minors *not* be forwarded to father as long as the current criminal no-contact order remained in effect. The juvenile court did not make a finding that supervised letter contact would be detrimental to the minors. Instead, it deferred to the no-contact order of the criminal court. This was error.

5

Although the criminal court's no-contact order is not contained in the record,[5] the ordinary terms of such orders would not prohibit the minors from sending letters to father.  Likewise, the statements of the juvenile court made during the discussion of letter contact suggest that the juvenile court did not necessarily believe such contact would violate the no-contact order, since the juvenile court stated the minor was not going to be in trouble for having previously sent the letters.  Thus, in the absence of evidence that the no-contact order would, in fact, prohibit the minors from sending letters to father, it was error for the juvenile court to prohibit them without first making a finding that sending them would be detrimental to the minors.

## DISPOSITION

That portion of the judgment restricting the minors' letters from being mailed to father is vacated and the matter is remanded for the juvenile court to make a determination on detriment and letter contact in accordance with the views stated herein. In all other respects, the judgment is affirmed.

      BLEASE     , J.

We concur:

   RAYE     , P. J.

   HOCH     , J.

---

[5]    Indeed, it does not appear to have been presented to the juvenile court either. Instead, the juvenile court was merely informed of the existence of "a criminal no-contact order."