Filed 10/28/20  In re M.C. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SECOND APPELLATE DISTRICT

### DIVISION FIVE

| | |
|---|---|
| In re M.C. et al., Persons Coming Under the Juvenile Court Law. | B303564 |
| | (Los Angeles County Super. Ct. No. 18CCJP04364A-B) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Plaintiff and Respondent, | |
| v. | |
| V.C., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Rudolph A. Diaz, Judge. Dismissed in part, reversed in part, and remanded with directions.

Richard L. Knight, under appointment by the Court of Appeal, for Defendant and Appellant.

Office of the County Counsel, Mary C. Wickham, County Counsel, Kim Nemoy, Acting Assistant County Counsel, and Peter A. Ferrera, Deputy County Counsel, for Plaintiff and Respondent.

V.C. (Mother) appeals a juvenile court order suspending her visitation rights with two of her children, Mykel and Mykah (collectively, the Minors). Mother contends the court improperly issued an order suspending her visits without adequate notice to her, and without holding an evidentiary hearing. In the alternative, Mother argues the juvenile court's order was substantively an abuse of the court's discretion. We consider, preliminarily, whether the order as to Mykah is appealable even though there had not been a disposition hearing for him at the time the appeal was noticed (there had been a disposition as to Mykel). The bulk of our discussion, however, addresses whether Mother had adequate notice that her visitation could be suspended.

## I. BACKGROUND

*A.      Pertinent Case History*

*    1.      Proceedings regarding Mykel*

Mother gave birth to Mykel in July 2018. Shortly thereafter, the Los Angeles County Department of Children and Family Services ("the Department") began investigating a referral alleging Mother intended to leave the hospital against medical advice. The Department sought and obtained an order removing Mykel from Mother's custody; he was placed with a foster parent.

The Department filed a petition under Welfare and Institutions Code section 300, subdivisions (b)(1) and (j)[1] alleging Mother suffered from mental and emotional problems including depression; Mykel's father (Father) suffered from mental and emotional problems including post-traumatic stress disorder; both parents failed to seek mental health treatment; and both parents' respective mental and emotional problems placed Mykel

---

[1]      Undesignated statutory references that follow are to the Welfare and Institutions Code.

2

at substantial risk of serious physical harm. As to Mother, the petition further alleged three of her older children (Mykel's half-siblings) had previously been declared dependents of the San Bernardino County Juvenile Court due to Mother's mental and emotional problems.

At a jurisdiction and disposition hearing in October 2018, the juvenile court sustained two counts of the dependency petition alleged against Mother (after amending the petition to delete a reference that Mother suffers specifically from depression). The court dismissed the count against Father in its entirety. The court ordered the Department to provide both parents with family reunification services and granted the parents monitored visitation with the Minors.

In a last minute information report filed prior to a review hearing approximately six months later, the Department described certain visits its personnel had monitored. When Mother and Father arrived at the wrong time for one visit, Mother slapped Father in the lobby of the Department's offices (Mykel was not present). During another monitored visit, Mother became angry at a Department social worker and yelled and cursed; the social worker ended the visit early as a result. The Department reported it was extremely difficult to facilitate extended and multiple visits for the family and requested the court decrease visitation.

The court held a contested six-month review hearing in June 2019. It found continued jurisdiction was necessary and returning Mykel to his parents would create a substantial risk of detriment to him. The court ordered reunification services were to continue, denied the Department's request to limit visitation, and kept its prior visitation order in place.

### 2. The initial petition regarding Mykah

In July 2019, Mother gave birth to Mykah, her second child with Father. The Department began investigating a referral the

day he was born. Hospital personnel reported Mother had not allowed the hospital to run certain tests, was not following through with hospital recommendations, and wanted to leave the hospital with Mykah against medical advice. The Department took Mykah into protective custody.

The Department filed a two-count petition under section 300, subdivisions (b)(1) and (j) alleging Mother's mental and emotional problems put Mykah at risk of harm. Mykah's case was assigned to a different judge than Mykel's case. The court held a detention hearing and detained Mykah. The court ordered the Department to provide family reunification and other services to Mother and Father, and ordered monitored visitation.

Mother and Father each filed section 388 petitions seeking to have visitation liberalized with Mykel and Mykah. The hearings on the petitions were scheduled for different dates.

### 3.     *The amended petition for Mykah*

The Department filed an amended petition in Mykah's case, this time alleging seven counts, five against Mother and two against Father. The counts against Mother are alleged under section 300 subdivisions (b)(1) and (j). They allege Mother has an unresolved history of failing to provide appropriate parental supervision to Mykah's siblings and half-siblings; has had multiple dependency petitions sustained against her; has been the subject of many referrals to the Department regarding medical neglect, chronic homelessness, and mental health issues; and has never demonstrated enough progress for the courts to return Mykah's siblings or half-siblings to her care.

The counts alleged against Mother also described recent concerning behavior, including, among other things: (1) exhibiting paranoia and delusional beliefs—for instance, accusing Mykel's foster mother of abusing him, stating a doctor was trying to kill her baby while she was pregnant, stating Mykah was detained due to a Hispanic conspiracy, and stating the army had

4

kidnapped her and done things to her; (2) engaging in volatile, erratic, unpredictable, and aggressively threatening behavior, including slapping Father's face in the lobby of the Department's offices and causing visitation monitors to refuse to monitor her visitation out of concern for their own safety, (3) receiving social security payments for depression but not obtaining treatment or medication to address depression, and (4) refusing shelter housing and preferring to live a homeless lifestyle, which was detrimental to infant Mykah.[2]

### 4.    *Additional relevant proceedings*

The juvenile court was set to hold a twelve-month review hearing in Mykel's case in September 2019, but the court continued the hearing because the Department changed its recommendation regarding reunification services in a last minute information report filed the day of the hearing (rendering notice deficient). The court also trailed the hearing on the parents' section 388 petitions. The court ordered the parents were to visit Mykel separately, not because they presented any safety risk when visiting jointly, but because the court believed it would benefit from having information regarding how the parents visit separately before the next hearing.

The juvenile court held the continued twelve-month hearing in Mykel's case the following month. It set a contest hearing for December, trailed the section 388 petitions again, and

---

[2]    As to Father, the petition alleged he demonstrated an inability to recognize Mother suffers from unresolved and untreated mental health issues and is unaware her behaviors pose a risk of harm to Mykah. The Department specifically alleged Father had been present during Mother's visits with Mykah but neither took action to safeguard Mykah from Mother's behavior nor acknowledged when her behavior was inappropriate.

granted parents' request to reinstate joint visits, which were to remain monitored.

In October 2019, a Department social worker transporting Minors to a visit with parents accidentally dropped Mykah, causing him to suffer a skull fracture and a small subdural hemorrhage. Hospital personnel who interacted with Mother and Father at Mykah's bedside reported the parents were very angry, uncooperative, and refused to speak to anyone.

B.     *The December 2019 Hearings Involving Visitation That Are at Issue in This Appeal*

1.     *The initial hearing*

In early December 2019, the parties appeared for what was supposed to be an adjudication hearing for Mykah. The court, however, granted a motion to continue the hearing and ordered Mother and Father to be informed of all medical appointments and allowed to attend so long as an approved monitor was available and the parents were not disruptive.

While the parties were present in court, Father's counsel noted Mykel's case was being heard in a different courtroom (with different attorneys for Mother and Father) and the two assignments were causing confusion. The juvenile court ordered the attorneys to confer regarding the consolidation of the Minors' cases and set a hearing to discuss the transfer of Mykel's case. The hearing was scheduled as a "receipt of report" hearing.

2.     *The last minute information reports*

The Department prepared a last minute information report for the receipt of report hearing set in Mykah's case. The document does not bear a stamp indicating when it was filed in court, but a printed date on the side of the report reads "12/19/19." The last minute report summarizes medical records pertaining to the head injury Mykah suffered when the social worker dropped him and—more pertinent for our purposes—

describes Mother's misbehavior during a recent visit with the Minors.

As recounted in the report, Mother and Father had a monitored visit with both Minors on December 13, 2019. During the visit, Mother called the police and paramedics to come to the Department's office to take Mykah to the emergency room because she believed scars on his body (later determined to be scars caused by eczema) revealed he had been abused. While the family was being transported to the hospital, Mother accused a police officer of threatening Mother because he scratched his nose. Then, when they arrived at the hospital, Mother refused to allow the paramedics to carry or hold Mykah, claiming there were cancerous chemicals on the paramedic's body that would hurt the child. Mother ultimately agreed to give Mykah to a social worker, but she then became angry at the social worker and lunged at her twice while the social worker was holding Mykah—prompting hospital staff, paramedics, and the police who accompanied the family to the hospital to intervene and have Mother escorted out of the hospital by security.

Although this last minute information report describes Mother's confrontational, bizarre behavior at the hospital, it does not include any statements or recommendations regarding restricting Mother's visitation rights.

The appellate record also includes a last minute information report filed in Mykel's case that indicates it was prepared for a hearing on December 19, 2019. The report, however, bears a stamp indicating it was filed in court on December 20, 2019. The top of the report, which has check boxes for "information only" or "change in recommendation," checked just the "information only" box.

The last minute report filed in Mykel's case includes a more detailed account of Mother's behavior that led to her being escorted out of the hospital on December 13, 2019—including reporting of a threat by Mother to kill the Department social

7

workers holding the Minors before she lunged at one of them. The report also notes the parents were unable to refrain from being disruptive during the Minors' medical care and states the Department was recommending termination of Mother's visits with the Minors until a new evaluation was completed to assess her current mental health.

### 3. *The December 19 hearing*

The juvenile court in Mykah's case held a hearing on December 19. The Department noted for the record that a document had been submitted, and the judge acknowledged seeing it. The transcript does not identify the document, however, and there is no discussion of whether Mother received a copy of it.

On the record, the Department stated it had a critical issue to discuss that should not be rushed, and requested the hearing be trailed until the next afternoon. The juvenile court responded the case was on calendar to address the transfer and consolidation of the Minors' cases. The parents' appointed counsel in Mykel's case were not present. The court stated transfer of Mykah's case for purposes of consolidating the two cases in one courtroom had already been initiated and should be completed the following day. The hearing was continued to permit the completion of the transfer.

### 4. *The December 20 hearing*

A last minute information report in the consolidated case that is dated and file-stamped December 20, 2019, again described Mother's misbehavior at the hospital on December 13, 2019, and recommended terminating her visitation. The report was accompanied by a signed statement from the firefighter/paramedic who had been present at the hospital; he stated Mother approached him in a fighting stance and screamed at a social worker, threatening to kill her. The report was also

accompanied by a request for a restraining order on behalf of one of the social workers. The social worker's accompanying declaration averred Mother was screaming at the hospital and opined her behavior negatively impacted the Minors, who were upset and crying. The social worker further declared Mother charged at her while she was holding one of the Minors, threatening to kill her and swearing at her.

The juvenile court that had been presiding over Mykah's case held an appearance progress hearing for both cases (now consolidated) on the same date as the filed stamp on the Department's last minute information report: December 20, 2019. When the discussion turned to Mother's visitation, the Department urged the court to suspend Mother's visitation with the Minors—explaining the Department believed there was a basis in what it called "today['s]" last minute information report to do so.

Mother's attorney objected to any change in visitation because no proper advance notice had been given and neither the Department nor Minor's counsel had filed a motion to change the court's prior visitation order. Mother's attorney emphasized the parties were in court only for a progress hearing and to receive reports. Mother's attorney complained that proceeding to suspend Mother's visitation violated due process principles because she had no opportunity to defend against what would essentially be a detriment finding.

Minors' counsel argued the court had authority to make any emergency order necessary for the safety of the Minors and would join in an emergency 388 filed by the Department to change the existing visitation order. Minors' counsel also noted the parents had been warned to behave at any medical appointments they attended. Mother personally interjected during argument by counsel, and the court had Mother escorted out of the courtroom.

9

The juvenile court observed Mother's mental health was at the heart of the issues being discussed and noted Mother became confrontational, aggressive, and had threatened a social worker. The court also remarked Mother had trouble controlling herself when she appeared in court, and the court believed Mother's outbursts were detrimental to the Minors. The court ordered Mother's visits with the Minors suspended until further court order. Father could continue with monitored visitation, but Mother was not to come within one-hundred feet of the visitation site. [3]

## II. DISCUSSION

We agree with the Department that the juvenile court's visitation order—as to Mykah—is not appealable because it is not a post-disposition order; we will therefore dismiss the appeal insofar as it challenges the order for visitation with Mykah. As to Mykel, however, the challenge to the visitation order is properly before us and, so far as the record reveals, Mother had no advance notice the Department intended to ask the court to suspend her visitation with the Minors at the hearing where the court ordered the requested suspension. This deprived Mother of the opportunity to prepare for the hearing and to muster any available contrary evidence. While Mother would have difficulty establishing an order suspending visitation is an abuse of discretion on the record as it stands, Mother must have the opportunity to make a record of her own—and it is reasonably probable the juvenile court would impose some lesser restriction on her visitation rights, rather than suspending visitation

---

[3]     In this appeal from the court's visitation order, the Department moved us to judicially notice a minute order from an April 17, 2020, hearing that indicates adjudication proceedings for Mykah were then still ongoing. We grant the request, but find the minute order immaterial to our resolution of the appeal.

altogether, if she is given the opportunity to introduce countervailing evidence.

### A. The Order Is Not Appealable as to Mykah

The Department argues the order suspending Mother's visits with Mykah is unappealable because the disposition order is the first appealable order in a dependency matter, Mykah's case was pre-disposition when the juvenile court issued its order suspending visits, and was still pre-disposition as of April 2020. Mother argues that because Mykah's case was consolidated with Mykel's prior to the issuance of the visitation order, an appealable order had, in fact, already been issued in the case. The Department's view of the matter is correct. No disposition order as to Mykah had issued at the time of the order challenged in this appeal, and we shall dismiss the appeal as to Mykah for that reason. We also decline to exercise our discretion to partially treat the appeal before us as a petition for extraordinary writ relief.

### B. Reversal as to Mykel Is Required Because Mother Was Not Given Adequate Notice

Mother contends the juvenile court deprived her of adequate notice by suspending her visitation rights with Mykel without a petition for modification under sections 385 or 388. Our review of the contention is de novo. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 222.)

There are two procedural avenues by which a juvenile court's visitation order can be properly modified: a petition filed by a party under section 388,[4] or a court's own action under

---

[4] "When a change in orders is being sought and the pertinent statutes do not otherwise provide a method for change, the proper method is a motion pursuant to section 388." (*In re Lance V.* (2001) 90 Cal.App.4th 668, 675 (*Lance V.*).) "'Section 388 plays a vital role in the statutory scheme by allowing the juvenile court

11

section 385. Because the Department did not file a petition under section 388 seeking to change the visitation order, we look to section 385 to determine the propriety of the order at issue here.

Pursuant to section 385, "[a]ny order made by the court in the case of any person subject to its jurisdiction may at any time be changed, modified, or set aside, as the judge deems meet and proper. . . ." A judge's ability to make such a change is not unfettered, however. Rather, it is "subject to such procedural requirements as are imposed by [Article 12 of the Welfare and Institutions Code]." (§ 385.)

Section 386 establishes one such procedural requirement. It provides: "No order changing, modifying, or setting aside a previous order of the juvenile court shall be made either in chambers, or otherwise, unless prior notice of the application therefor has been given by the judge or the clerk of the court to the social worker and to the child's counsel of record, or, if there is no counsel of record, to the child and his or her parent or guardian." (§ 386.) Precedent reinforces the importance of notice. (See, e.g., *In re Andrew A.* (2010) 183 Cal.App.4th 1518, 1528 ["[A]lthough a juvenile court has the authority under section 385 to change, modify or set aside a prior order, that action may be taken only 'after providing the parties with notice and the opportunity to be heard'"]; *Nickolas F. v. Superior Court* (2006) 144 Cal.App.4th 92, 111, fn. 16 ["Although section 386 mandates notice to a parent only when the child is not represented by counsel, when a modification of a prior order may affect the interests of the parent or the child, assuming parental

_____

to modify existing orders in response to new evidence and changed circumstances.' [Citation.] It 'contains procedural safeguards designed to protect the due process rights of those whose interests will likely be affected by the decision.' [Citation.]" (*Id.* at 676.)

12

rights have not been terminated, due process requires that the court provide the parent with notice and an opportunity to be heard"]; *In re Joshua M.* (1998) 66 Cal.App.4th 458, 471 ["'[T]he right to notice and an opportunity to be heard "must be granted at a meaningful time and in a meaningful manner"'"].)

Mother was not given advance notice that the hearing on December 20, 2019, might result in a change to her visitation rights. The December 20 hearing was an appearance progress hearing, continued from the receipt of report hearing scheduled the previous day. Though the record includes a last minute information report in Mykah's case dated December 19, that report, which bears no file stamp, detailed the incident at the hospital but did not recommend suspension of Mother's visitation rights.

In arguing there was no notice error, the Department cites a different last minute information report, one that did recommend termination of visitation, that is also dated for a December 19, 2019, hearing.   The file stamp on that report, however, indicates it was filed on December 20, 2019, i.e., the same day as the hearing at which Mother's visitation rights were suspended.[5] Nothing in the record indicates it was filed the day before,[6] or that Mother received a copy of that report the day before. There is thus no evidence Mother received notice prior to

---

[5]    Significantly, the Department's attorney at the December 20, 2019, hearing where visitation was suspended also described the last minute information before the court as if it was submitted that same day.

[6]    The Reporter's Transcript for the December 19 hearing does indicate the Department submitted a document to the juvenile court on that date, but it does not name or otherwise identify the document. There is thus no evidence in the record that contradicts the representation by Mother's attorney that there had been no proper notice of the Department's intention to seek a revocation of Mother's visitation rights.

the hearing that the Department was requesting termination or suspension of her visitation rights.

The Department also argues there was no notice problem because Mother was present at the hearing and did not ask to present evidence, cross-examine anyone, or continue the proceedings. It is true Mother was present at and represented by counsel at the hearing, but the Department's argument rings hollow when Mother's attorney did object that Mother had no notice visitation would be at issue and explained the lack of notice hampered (if not completely foreclosed) the ability to defend against a change to the visitation order. This was not, in other words, notice and an opportunity to be heard at a "meaningful time and in a meaningful manner." (*In re Joshua M.*, *supra*, 66 Cal.App.4th at 471.)

The failure to provide adequate notice prejudiced Mother. The juvenile court's existing order at the time visitation was suspended still required provision of reunification services, and "[v]isitation between a dependent child and his or her parents is an essential component of a reunification plan . . . ." (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580, disapproved on another ground in *Conservatorship of O.B.* (2020) 9 Cal.5th 989.)

Mother argues that if she had notice her visitation with Minors would be at issue during the hearing, she could have presented evidence showing the December 13 incident was a single incident that only indirectly affected her children and that her visitation was overall beneficial to Minors. We think that is enough to establish the requisite probability of a more favorable result—which would include an order that placed additional limits or conditions on visitation, rather than suspending visitation altogether. The Department again counters that Mother had a sufficient opportunity to be heard because she was present in court, but springing an unexpected issue on a party and hoping her attorney can build the plane while flying it is no substitute for adequate notice that would allow for preparing a

14

defense, securing documentary evidence, and contacting potential witnesses.

The Department additionally argues that if any due process error occurred, it is harmless because additional hearings (adjudication for Mykah and a twelve-month review for Mykel) were pending, which would allow Mother to ask the court to readdress visitation and request the opportunity to present evidence. This argument is flawed for two reasons. First, the existence of future hearings does not render harmless the deprivation of visitation in the interim. Even if we assume, as the Department does, that the juvenile court would have suspended visitation between the December 20 hearing and any future continued date, that does not mean it would have set the hearing on the request for an earlier date given Mother's objection and the Department's representation the situation was an emergency. Second, once the order without adequate notice issued, Mother would bear a burden to establish changed circumstances to succeed on a section 388 petition that she would not have borne at a hearing with adequate notice of *the Department's* request to change the existing visitation order.

Based on the foregoing, we remand for the court to conduct a properly noticed hearing on the issue of visitation. "We recognize, however, that [more than six months have] transpired since this visitation order was made and that circumstances may have changed in the interim. On remand, the juvenile court should consider ........current circumstances in crafting any new visitation order." (*In re Shawna M.* (1993) 19 Cal.App.4th 1686, 1691.)

## DISPOSITION

The appeal, as to Mykah, is dismissed. The juvenile court's order suspending visitation is reversed as to Mykel, and the matter is remanded to the juvenile court for further proceedings consistent with this opinion.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

BAKER, J.

We concur:

RUBIN, P. J.

KIM, J.

16