Filed 3/16/21  In re H.P. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re H.P., a Person Coming Under the Juvenile Court Law. | |
| CONTRA COSTA COUNTY BUREAU, Plaintiff and Respondent, v. A.W., Defendant and Appellant. | A159184 (Contra Costa County Super. Ct. No. J17-00914) |

Mother appeals an order of the juvenile court terminating reunification services as to her now 16-year-old son (H.P.) and selecting a permanent plan of foster care. This is mother's third appearance before this court in related dependency proceedings and as with her prior submissions, her appellate briefing largely fails to comply with the rules of court. More importantly, mother fails to address the relevant order in her opening brief and asserts her grounds for reversal for the first time only in her reply brief. While the matter could be disposed of on these grounds, because of the significant interests of the family in these proceedings, we have attempted to respond to mother's concerns insofar as we are able to understand them.

1

## Background

In August 2017, H.P. and his two siblings were removed from his mother's care and a petition filed by Contra Costa County Children and Family Services Bureau (the bureau) pursuant to Welfare and Institutions Code section 300, subdivisions (a), (b)(1), (c), and (j).[1] In March 2018, the court sustained the allegations of the petition. The dependency petition involving the older brother was dismissed after the jurisdictional hearing. (*In re K.P.* (A155450, Jan. 21, 2020) [nonpub. opn.].) At the dispositional hearing, H.P.'s placement in foster care was continued. The court ordered that visitation between mother and H.P. occur in a therapeutic setting and directed the bureau to provide mother with reunification services.

Shortly after entry of the dispositional order, the bureau filed a section 388 petition requesting that the court terminate visitation between mother and H.P. The bureau reported that H.P. did not want to see his mother and that he was experiencing severe anxiety as a result of the proposed visitation. On October 5, 2018, the court granted the bureau's motion to deny visitation.

The six-month review hearing was commenced in September 2019 for both H.P. and his younger sister.[2] In advance of the hearing, the social worker submitted a status-review report recommending termination of reunification services and adoption of a permanent plan of foster care for H.P. According to the report, mother's case plan included four components, none of which had been completed: parenting class, psychological assessment, individual counseling, and anger management, all with approved providers.

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] As is typical of this case, the review hearing was continued multiple times for reasons not addressed nor challenged in the present appeal.

The report explains that mother reported completion of a psychological assessment but that the bureau had been unable to approve the provider because mother was refusing to sign a release allowing the bureau to speak with him. Similarly, mother reported engaging in individual therapy with a provider of her choice, but again refused to sign a release, thereby precluding the bureau from determining her progress. According to mother, the same provider concluded that she did not need to attend anger management.

The hearing lasted for several days during which mother, the social worker, and the three children all testified. At the conclusion of the hearing, the court found there was a lack of substantial compliance with the case plan and that return of the children to the custody of their mother would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the children. The court also found that it would not be in H.P.'s best interest to conduct a section 366.26 hearing because he was not a proper subject for adoption and no one was willing to accept legal guardianship. Accordingly, the court adopted a permanent plan of foster care for H.P.[3]

Mother timely filed a notice of appeal from the November 2019 order.

## Discussion

The present appeal is from the order terminating mother's reunification services and selecting a permanent plan of foster care for H.P. Mother's entire opening brief, however, disputes decisions made in connection with the jurisdictional and dispositional orders, which are now final. Contrary to mother's assertion, her repeated allegations of "fraud" do not

---

[3] The court set a section 366.26 hearing for the younger sister. This court reviewed that order by writ decided in February 2020. (*A.W. v. Superior Court* (A159048, Feb. 13, 2020) [nonpub. opn.].)

permit her to challenge these final orders. Mother's allegations were fully addressed in this court's prior opinions. (*In re K.P.* (A155450, Jan. 21, 2020) [nonpub. opn.]; *A.W. v. Superior Court, supra,* A159048 [nonpub. opn.].)

In her reply brief, mother asserts for the first time that the court erred in denying her visitation with her son and abused its discretion by not selecting legal guardianship as his permanent plan. She also challenges the sufficiency of the evidence in support of the trial court's finding that she failed to complete her case plan. We briefly address her concerns.

*Visitation*

Mother suggests she was improperly denied visitation with H.P. We disagree.

Visitation is an essential part of a reunification plan. Section 362.1, subdivision (a) provides: "In order to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian, or to encourage or suspend sibling interaction, any order placing a child in foster care, and ordering reunification services, shall provide . . . for visitation between the parent or guardian and the child. Visitation shall be as frequent as possible, consistent with the well-being of the child." Section 362.1, subdivision (a)(1)(B), provides however, that "[n]o visitation order shall jeopardize the safety of the child." Accordingly, "when reunification services are being provided, it is error to deny visitation with the parent to whom the services apply unless there is sufficient evidence that visitation would be detrimental to the child." (*In re J.N.* (2006) 138 Cal.App.4th 450, 458; *In re Matthew C.* (2017) 9 Cal.App.5th 1090, 1102 ["juvenile court may suspend or deny visitation pursuant to section 361.2, subdivision (a), if such visitation

4

would be inconsistent with the physical or emotional well-being of the child"].)

Here, the court found that continued visitation would be detrimental to H.P.'s emotional well-being. The social worker's report submitted in support of the bureau's application to terminate visitation states that H.P. was adamant that he did not want to visit with mother and that when he was told visits were being scheduled he began suffering from anxiety so severe that he required a trip to the emergency room. The report also indicates that H.P.'s therapist believed it was "too emotionally stressful for [H.P.] to have visitation with his mother" at that time. This evidence amply supports the court's ruling. (See *In re Mark L.* (2001) 94 Cal.App.4th 573, 580-581, disapproved on another ground by *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7 [substantial evidence standard applies to review juvenile court's finding that visitation would be detrimental].)[4]

*Selection of a Permanent Plan*

At a review hearing, if the minor is not returned to parental custody and the court finds that reunification services are no longer appropriate, the court must either set a section 366.26 hearing to select a permanent plan or order the minor to remain in long-term foster care. (§ 366.21, subds. (g)(4) & (g)(5).) Under section 366.21, subdivision (g)(5) the court may order that the child remain in foster care, "only if the court finds by clear and convincing

---

[4] Mother also argues that H.P. "has along with [his older brother] been denied his requested access to family and is therefore wrongfully imprisoned by the county." Assuming that mother is challenging the lack of visitation between the brothers, we note that "a parent lacks standing to raise the issue of sibling visitation" because "the minor's interest in maintaining a relationship with siblings is unrelated to the parents' interest in reunification." (*In re Daniel H.* (2002) 99 Cal.App.4th 804, 809.)

evidence, based upon the evidence already presented to it, . . . that there is a compelling reason for determining that a hearing held pursuant to Section 366.26 is not in the best interests of the child because the child is not a proper subject for adoption and has no one willing to accept legal guardianship as of the hearing date."

Mother does not challenge the court's finding that H.P. is not the proper subject for adoption. She contends, however, that the bureau erroneously reported to the court that her son " 'has no one willing to accept legal guardianship.' " Mother argues that the bureau failed to contact either the maternal grandmother or the older sibling, both of whom she asserts have indicated an interest in being son's legal guardian.

Substantial evidence supports the court's finding that no appropriate candidate for legal guardianship was available at the time of the hearing. The sibling was only 16 years old at the time of the hearing and, thus, not eligible to be son's legal guardian. Nothing in the record suggests that the maternal grandmother requested legal guardianship and the record makes clear why the bureau did not pursue placement with the grandmother. Mother was out of the country for work and the children were in the grandmother's care at the time of their detention. Concerns were raised at that time that the grandmother was unable to care for the children because she does not drive and did not have a working phone. Nonetheless, the dispositional report indicates that the social worker had spoken with the grandmother several times about possible placement and that the social worker would be submitting an application for placement with grandmother in Florida. By the time of the review hearing, however, H.P. made clear to the social worker that he did not want to live with the maternal grandmother because he did not believe she could keep him safe from his mother. He also

indicated that his grandmother is in her 80's and that she would require him to care for his younger sister, which he did not want to do. Given the totality of the circumstances, the court reasonably selected foster care as a permanent plan for minor.

*Sufficiency of the Evidence*

Mother disputes the social worker's assertion that she failed to complete her case plan. She argues that she completed all components of the plan through her chosen providers. This court considered and rejected all of mother's arguments in the writ proceedings involving the younger sister. (*A.W.* v. *Superior Court, supra,* A159048 [nonpub. opn.].) We previously explained, "[S]ubstantial evidence supports the court's finding that mother's progress 'toward alleviating or mitigating the causes necessitating placement in foster care' had been minimal and demonstrated that returning daughter to mother's care would create a substantial risk of detriment. (§ 366.21, subd. (e)(1) ['The failure of the parent or legal guardian to participate regularly and make substantive progress in court-ordered treatment programs shall be prima facie evidence that return would be detrimental.'].) Mother relies on unverified reports by her unapproved providers to support her claim that she completed the case plan as ordered by the court. However, when the court offered to permit one of the providers to testify by phone, mother agreed that the provider could confirm that he authored the report but she would not consent to any questions regarding the basis of his opinions. She concedes that she refused to sign a release permitting him to explain the basis for his opinions. The court warned mother that although the report would be admitted into evidence, absent a sufficient foundation that and other reports would not be afforded the weight she believed they were due. [¶] With respect to the purported psychological evaluation submitted by

7

mother, the court explained, 'there is the report from Dr. Dahl which I've already indicated is not very lengthy. It does not go through what his specific qualifications are. There is really no CV attached. Nothing. It is what I will call somewhat of a cursory report. Number one, I am not entirely sure why this is called a non-confidential evaluation, but a number of the . . . impressions are conclusory. It doesn't give the information upon which the tests were actually administered. [¶] Usually there is a long list of not only what tests are administered but a number of other factors related to what the purpose of the test is, and really this is sort of this conclusory description all very positive to the mother, I'll concede that, but it's not necessarily supported by what I will call independent testing. So it's highly unusual, number one, to see an evaluation of this nature without more information. But when the Department really would like to have had further information or have him subject to cross-examination because he would purport to be the mother's expert witness, he was not—he did not come to give further credence to what was provided. [¶] Again, the section formulation, I am not even entirely sure what he's basing this on. But I will indicate there is nothing in this psychological evaluation that discusses any real understanding of all of the issues in this case, what was actually looked at, what—how many sessions actually occurred, the time that he spent with Ms. Wood, none of that is in this evaluation that I can see and it's truly one of the most what I would refer to as superficial evaluations. It does not get into the depth and that's what we need in a psychological evaluation.' " (*Ibid*.) Our analysis of the evidence presented at the combined review hearing applies with equal force to H.P.'s case. Accordingly, we find that substantial evidence supports the termination of reunification services in this proceeding as well.

## Disposition

The order terminating reunification services and selecting foster care as a permanent plan is affirmed.


POLLAK, P. J.

WE CONCUR:

TUCHER, J.
BROWN, J.