Filed 3/28/16  In re A.P. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re A.P. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN BERNARDINO COUNTY CHILDREN & FAMILY SERVICES, Plaintiff and Respondent, v. W.S., Defendant and Appellant. | E064299 (Super.Ct.Nos. J261183, J261184) OPINION |

APPEAL from the Superior Court of San Bernardino County.  Steven A. Mapes, Judge.  Affirmed.

Lisa A. Raneri, under appointment by the Court of Appeal, for Defendant and Appellant.

Jean-Rene Basle, County Counsel, and Kristina M. Robb, Deputy County Counsel, for Plaintiff and Respondent.

1

W.S. (mother) and M.P. (father) have two children together. In 2015, when this dependency proceeding was filed, their daughter Au.P. was seven; their daughter Ad.P. was four. The juvenile court took jurisdiction based on substantial evidence that the mother intentionally caused a small burn on Ad.P.'s face using an iron. It awarded the father sole custody of both children, it allowed the mother supervised visitation once a month, and it dismissed the dependency.

The mother appeals, contending:

1. There was insufficient evidence to support the jurisdictional finding that the mother failed to protect Ad.P. by failing to seek medical treatment for her.

2. The order limiting the mother to just one supervised visit a month was not supported by sufficient evidence that more frequent visitation would be detrimental.

We will hold that, because the mother does not dispute the jurisdictional finding that she burned Ad.P., the alternative jurisdictional finding that she failed to provide medical treatment for Ad.P. is not justiciable. We will further hold that the juvenile court could properly limit visitation, even in the absence of evidence that more frequent visitation would be detrimental, subject only to review for abuse of discretion; the mother's trial counsel forfeited any claim of abuse of discretion by failing to raise it below, and the mother does not claim abuse of discretion on appeal. Hence, we will affirm.

2

# I

## FACTUAL BACKGROUND

The mother had older children from a previous relationship. Her child welfare history included the following:

1. In 1995, an allegation that she had physically abused a son, who was then four years old, was substantiated.

2. In 1999, an allegation that she had engaged in excessive corporal punishment of a daughter, who was then five years old, was substantiated.

3. In 2009, an allegation that she had created a substantial risk to a son, who was then 17 years old, was substantiated.

In 2014, the mother and the father separated. They shared custody of their two children.

In or around August 2014, the mother physically abused Ad.P., causing a welt on her shoulder and back. As a result, both children were declared dependents. San Bernardino County Children and Family Services (CFS) provided family maintenance services.[1] The mother was convicted of misdemeanor child abuse (Pen. Code, § 273a, subd. (b)) and placed on probation.

In May 2015, the father's current wife or girlfriend (stepmother) contacted CFS. She claimed that Ad.P. had told her that "she didn't want her mother to know she had wet

---

[1] Apparently the previous dependency ended just one week before the events that led to the present dependency.

herself because her mother would put her in the bedroom with the lights off." When the social worker questioned Ad.P., however, she denied this.

On June 28, 2015, the mother contacted the police and/or CFS. She told the police officer who responded that, the previous day, when she had picked the children up from the father, she noticed a burn mark on Ad.P.'s face, near her left eye. According to the mother, Ad.P. explained that the stepmother had burned her with an iron while they were working on a craft project.[2] The mother admittedly did not seek medical treatment.

The officer saw the mark on Ad.P.'s face; he described it as "small" and said it "appeared to be a scrape or rug burn . . . . [It] did not look like it was caused by a hot iron as it was not raised or blistered."

Ad.P. told the officer that she did not know how she got the mark on her face. She said she had had been working on a craft project with the stepmother that involved an iron, but "at no time did she get burned by anyone or anything."

On June 29, according to a preschool staffer, Ad.P. said she got the mark when she fell on a rug and hit her face on a chair; her father and her sister were with her.

On July 1, according to the stepmother, Ad.P. told her that she got the mark when the mother held an iron to her face, because the mother wanted to get the father and the stepmother into trouble.

---

[2]     The record includes a photo of Ad.P. proudly displaying a butterfly made out of fuse beads, which can be arranged in a pattern and then melted together with an iron.

4

On July 2, a social worker interviewed both children and the stepmother. Ad.P. said "that her mommy was mad because she wasn't listening and . . . burned her face with an iron." "[S]he cried a little and then her mother put Neosporin on the burn."

The stepmother admitted that she and Ad.P. had been "doing arts and crafts with the iron," but she insisted that Ad.P. had not been burned.

Also on July 2, a police officer interviewed Ad.P. Ad.P. said again that the mother had burned her with an iron because she did not listen. She added that the iron was white. That officer described the mark as what "appeared to be a healing burn," half an inch to an inch long "and consistent with the shape of the tip of an iron."

The mother told both the social worker and the police that she did not have an iron in her home.

On July 23, forensic interviews were conducted with both children. Ad.P. seemed apprehensive; she said she was worried about getting the mother into trouble. She pointed to the mark and said, "[E]veryone thinks mommy did this to me but she didn't." When asked how she got the mark, she did not respond.

Ad.P. also said that, on more than one occasion, the mother had locked her in her room, in the dark, with the lightbulb removed, because she cried.

Au.P. confirmed that the mother would put Ad.P. on timeout in her room, in the dark, with the lightbulb removed, and that Ad.P. would cry.

Both children said that the mother used to hit them with a belt and a shoe but did not do so anymore.

5

Also on July 23, the police searched the mother's home pursuant to a warrant and found a white iron, with water in the tank. The mother claimed that "she had no idea who the iron belonged to or how it got into her home."

II

PROCEDURAL BACKGROUND

CFS detained the children, placed them with the father, and filed dependency petitions concerning them.

In August 2015, at the jurisdictional/dispositional hearing, the juvenile court sustained the following allegations:

1. As to Ad.P.:

a. Failure to protect (Welf. & Inst. Code, § 300, subd. (b)), in that the mother burned Ad.P.'s face with an iron.

b. Failure to protect (Welf. & Inst. Code, § 300, subd. (b)), in that the mother failed to seek medical treatment for Ad.P.

2. As to Au.P.:

a. Abuse of a sibling (Welf. & Inst. Code, § 300, subd. (j)), in that the mother burned Ad.P.'s face with an iron.

It removed the children from the mother's custody and placed them in the father's custody. It allowed the mother supervised visitation once a month, for a minimum of two hours at a time. It then dismissed the dependencies.

6

III

THE SUFFICIENCY OF THE EVIDENCE OF FAILURE TO PROTECT

BASED ON FAILURE TO SEEK MEDICAL TREATMENT

The mother contends that there was insufficient evidence to support the jurisdictional finding that she failed to protect Ad.P. by failing to seek medical treatment for her.

CFS responds that the validity of this allegation is not justiciable, given the mother's failure to contest the additional jurisdictional finding that she failed to protect Ad.P. by burning her face with an iron.

As a general rule, "'[w]hen a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.' [Citation.]" (*In re I.J.* (2013) 56 Cal.4th 766, 773.)

However, there are several exceptions to this general rule: "Courts may exercise their 'discretion and reach the merits of a challenge to any jurisdictional finding when the finding (1) serves as the basis for dispositional orders that are also challenged on appeal [citation]; (2) could be prejudicial to the appellant or could potentially impact the current or future dependency proceedings [citations]; or (3) "could have other consequences for

[the appellant], beyond jurisdiction" [Citation].' [Citation.]" (*In re D.P.* (2015) 237 Cal.App.4th 911, 917.)

Here, the mother's only challenge to the dispositional order is her contention that the juvenile court erred by limiting her visitation to once a month. The disputed jurisdictional finding is not material to this contention, particularly in light of the undisputed jurisdictional finding. The disputed jurisdictional finding also is no longer material to the current dependency proceeding, because it has terminated.

The mother argues that the disputed jurisdictional finding could prejudice her in future custody proceedings in family law court. In her view, the undisputed jurisdictional finding merely establishes that she burned Ad.P.; the disputed jurisdictional finding goes beyond this by suggesting (falsely) that she burned Ad.P. so badly that Ad.P. needed medical attention and was at risk of serious physical harm.

The undisputed jurisdictional finding, however, was also a finding of failure to protect under Welfare and Institutions Code section 300, subdivision (b). Thus, it, too, required the juvenile court to find that "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness . . . ." (*Ibid*.) Any dispute over whether Ad.P. *actually* suffered serious physical harm can still be litigated in any future family law proceedings.

It must be remembered that Ad.P. had been declared a dependent before, in 2014. That time, she had a welt on her shoulder and back; jurisdiction was based on serious physical harm inflicted nonaccidentally by a parent (Welf. & Inst. Code, § 300, subd.

8

(a)), as well as on failure to protect (Welf. & Inst. Code, § 300, subd. (b)).  In addition, the mother had a history of physically abusing her children that went back to 1995.  Against this background, it is simply inconceivable that the question of whether the most recent injury inflicted by the mother did or did not require medical attention could be dispositive in future custody proceedings.

Finally, precisely because we are declining to review the disputed jurisdictional finding, it should not have collateral estoppel effect.  (*Zevnik v. Superior Court* (2008) 159 Cal.App.4th 76, 83-84 [when an appellate court has affirmed decision on only one of several alternative grounds given by trial court, the other grounds are not collateral estoppel].)

We therefore conclude that the mother has not shown that the disputed jurisdictional finding could prejudice her in any way.  Accordingly, we will not review it in this appeal.

IV

LIMITATION OF VISITATION

The mother contends that the juvenile court erred by limiting her to just one supervised visit a month.

CFS responds that the mother forfeited this contention by failing to raise it below.

A.     *Additional Factual and Procedural Background.*

CFS was recommending that the juvenile court award the father sole custody, dismiss the dependency, and allow the mother supervised visitation once a month.  At the

9

jurisdictional/dispositional hearing, after the juvenile court ruled in accordance with this recommendation, there was this exchange:

"[MOTHER'S COUNSEL]: Objection to the supervised visits and objecting to the family law order. [¶] . . . [¶]

"THE COURT: You're agreeing to the transfer of custody to the father, but not to the supervised visits? Is that what it is, or you are objecting to everything?

"[MOTHER'S COUNSEL]: I'm objecting to everything, your Honor.

"THE COURT: Okay. Then I am overruling everything . . . ."

B.    *Discussion*.

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, fn. omitted; see also *In re Anthony P*. (1995) 39 Cal.App.4th 635, 640-642 [mother forfeited contention that juvenile court should have ordered sibling visitation].)

Here, the mother's counsel did specifically object to supervised visitation, but he did not specifically object to visitation once a month. Admittedly, he added, "I'm objecting to everything . . . ." Nevertheless, this was a mere general objection, and "[g]eneral objections are insufficient to preserve issues for review. [Citation.] The objection must state the ground or grounds upon which the objection is based. [Citation.]" (*In re E.A.* (2012) 209 Cal.App.4th 787, 790.)

10

As a general rule, a contention that a judgment or order is not supported by substantial evidence is an exception to the forfeiture rule. (*Tahoe National Bank v. Phillips* (1971) 4 Cal.3d 11, 23, fn. 17; *In re Erik P.* (2002) 104 Cal.App.4th 395, 399; *In re Brian P.* (2002) 99 Cal.App.4th 616, 623.) The mother therefore argues that we can review the question of whether there was sufficient evidence to support the visitation order.

Specifically, she contends that the order had to be supported by evidence that "restricting [her] to one visit per month . . . was necessary to protect the children's physical safety and well-being or that additional visitation would be detrimental to them." Thus, she argues that there was insufficient evidence of such detriment. We do not agree, however, that evidence of such detriment was required.

During the reunification period, "[v]isitation shall be as frequent as possible, consistent with the well-being of the child." (Welf. & Inst. Code, § 362.1, subd. (a)(1)(A).) "Visitation between a dependent child and his or her parents is an essential component of a reunification plan . . . . [Citation.]" (*In re Mark L.* (2001) 94 Cal.App.4th 573, 580.) Hence, "[i]t is ordinarily improper to deny visitation absent a showing of detriment. [Citations.]" (*In re Mark L.*, *supra*, 94 Cal.App.4th at p. 580.) Similarly, after reunification services are terminated but before a permanency planning hearing is held, the juvenile court must continue to allow visitation unless it finds that visitation would be detrimental to the child. (Welf. & Inst. Code, §§ 361.5, subd. (f), 366.21, subd. (h), 366.22, subd. (a)(3), 366.25, subd. (a)(3).)

11

Note that, even during the reunification period, a finding of detriment is necessary only if the juvenile court wholly *denies* visitation. By contrast, if the juvenile court *limits* visitation, no finding of detriment is required. Rather, "[t]he frequency of . . . visits . . . depends on a broader assessment by the court of the child's 'well-being.' [Citations.]" (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1491.) "We review an order setting visitation terms for abuse of discretion. [Citations.]" (*In re Brittany C*. (2011) 191 Cal.App.4th 1343, 1356.)

In this case, moreover, there was no reunification period. Rather, after finding jurisdiction, the juvenile court issued exit orders, then immediately terminated jurisdiction. We may assume that, even so, the juvenile court could not wholly deny visitation without a finding of detriment. Nevertheless, we have found no authority for the proposition that an order limiting visitation must be supported by a finding of detriment.

The mother cites Welfare and Institutions Code section 361.2, subdivision (b)(1), which provides that, when the juvenile court removes a child from a custodial parent, places the child with a noncustodial parent, and terminates jurisdiction (see Welf. & Inst. Code, § 361.2, subd. (a)), it "may also provide reasonable visitation by the noncustodial parent." That subdivision does not apply here, because the father was not a noncustodial parent. The children were living with both the father and the mother, who shared custody of them. In any event, the subdivision does not require any finding of detriment before the juvenile court can limit visitation.

We therefore conclude that the applicable standard of review is abuse of discretion. The mother's counsel forfeited any claim that the visitation limitation was an abuse of discretion by failing to raise it below. (Cf. *People v. Scott* (1994) 9 Cal.4th 331, 356 [in criminal case, "complaints about the manner in which the trial court exercises its sentencing discretion . . . cannot be raised for the first time on appeal."]) The mother has doubly forfeited a claim of abuse of discretion by failing to raise it in this appeal. Her only claim is that there was insufficient evidence that more frequent visitation would have been detrimental. Because evidence of detriment was not required, we reject this contention.

V

DISPOSITION

The order appealed from is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ

P. J.

We concur:

CODRINGTON

J.

SLOUGH

J.

13