Filed 12/29/21  In re K.A. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re K.A. et al., a Person Coming Under the Juvenile Court Law. | |
| | D079269 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J516600B,C) |
| v. | |
| J.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Browder A. Willis III, Judge.  Affirmed.

Liana Serobian, under appointment by the Court of Appeal, for Defendant and Appellant.

Lonnie J. Eldridge, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Eliza Molk, Deputy County Counsel, for Plaintiff and Respondent.

This is the second appeal by J.G. (Mother) in juvenile dependency proceedings involving her two daughters (K.A. and S.G.). In the prior appeal, we affirmed the juvenile court's orders declining to return K.A. and S.G. to Mother's care following the six-month review hearing. Thereafter, Mother's threatening behavior caused emotional harm to the girls, leading the court to grant a petition filed pursuant to Welfare and Institutions Code section 388[1] to terminate all visits between Mother and the children pending a selection and implementation hearing. Mother contends the juvenile court erred in granting this petition both as a matter of law and by abusing its discretion in finding the continued visits to be detrimental to the children. We conclude the juvenile court did not err in granting the petition and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND

As discussed in our prior opinion, "[i]n October 2019, the San Diego County Health and Human Services Agency (the Agency) petitioned the juvenile court under section 300, subdivisions (b) and (d) on behalf of five-year-old K.A. and under section 300, subdivision (b) on behalf of one-year-old S.G. The Agency alleged that Mother was unable to protect the children from physical harm and that K.A. had been sexually abused." (See *In re K.A.* (Apr. 2, 2021, D078028) [nonpub.opn.].) At a jurisdiction and disposition hearing in February 2020, the juvenile court sustained the allegations of the petitions.

Our prior opinion discussed the history of these proceedings up to the six-month review hearing, held on September 29, 2020. At that hearing, the juvenile court found that returning the children to Mother's care would create a substantial risk of detriment. On appeal, we affirmed that order.

---

[1] All further statutory references are to the Welfare and Institutions Code.

The juvenile court ordered supervised phone and video visits with Mother and gave the Agency discretion to expand to supervised in-person visits. Thereafter, the Agency explained that due to the need for the case to be assigned to a new social worker after the previous social worker obtained a restraining order against Mother, it would need time to assess whether in-person visits were appropriate. In the meantime, the Agency continued to facilitate video visits. From October to December 2020, Mother participated in six video visits and one in-person visit with her daughters. The in-person visit went well, but Mother had to be repeatedly reminded not to talk about the case with her daughters. Due to Mother's refusal to refrain from discussing the case, the Agency decided that further in-person visits would not be appropriate. The Agency also attempted to obtain a visitation coach for Mother, but no provider would accept Mother as a client given the multiple restraining orders against her arising from these proceedings.

In March 2021, Mother requested a special hearing to obtain a court order to reinstate in-person visits. In a responsive report, the Agency noted that Mother had been incarcerated in February 2021 following an arrest for carrying a concealed 11 and a half-inch knife with a six-inch blade while casing vehicles. The Agency also reported that Mother was sending increasingly hostile emails, refusing to allow social workers inside her home, and accusing the Agency of kidnapping the children to sell them for adoption. In the social worker's assessment, she opined that the Agency was concerned Mother's anger toward the Agency could lead to harm to both the children and Agency staff. Accordingly, the social worker recommended that the visits remain "virtual and supervised."

At the hearing on Mother's petitions, minors' counsel agreed with the Agency and opposed Mother's request for in-person visits. However, the court

sought to balance the Agency's concerns with Mother's need for visits by ordering the Agency to provide one in-person visit on the condition that Mother agree to not "utter a single hostile word or an angry word or aggressive word."

The in-person visit occurred in late March 2021.[2]  At the visit, Mother read aloud a letter she wrote to K.A. that mentioned the case, but otherwise the social worker noted that the visit "went well."  Due to concerns about Mother's comments, the Agency continued to recommend that there be no additional in-person visits.

At the 12-month review hearing, the juvenile court found that returning the children to Mother's care would create a substantial risk of detriment and terminated Mother's reunification services.  The court set the matter for a selection and implementation hearing pursuant to section 366.26 and ordered that Mother was to have "liberal supervised visitation."[3]

However, three days later, the Agency filed a request to change the court's order to allow for only supervised video visits and to obtain a temporary restraining order to protect the social worker assigned to the case from Mother.  In a report, the Agency explained that the day after the 12-month review hearing, Mother threatened to kill the social worker and then commit suicide.  The police took Mother to a hospital, where she tested positive for methamphetamine, amphetamine, and alcohol and was thereafter placed on an involuntary psychiatric hold.  The Agency also

---

[2]     Mother mistakenly claims on appeal that the last in-person visit occurred in November 2020 and does not discuss this visit.

[3]     Mother filed a notice of intent to file a writ petition in this court to challenge the juvenile court's orders at the 12-month hearing, but no petition was filed after counsel was unable to find any viable issues for writ review.

received reports that Mother had threatened a neighbor with a gun and another individual had obtained a restraining order against Mother in March 2021.

The juvenile court found the Agency had made a prima facie showing and suspended in-person visits. The court also issued a temporary restraining order as requested for the social worker.

Thereafter, Mother posted on social media to suggest that she had been " '[r]obbed' " of her daughters and that they were being sold into sex trafficking. At an evidentiary hearing, the social worker testified that although the girls enjoyed their in-person visits with Mother, she needed to be redirected to avoid discussing inappropriate matters with her daughters. The social worker opined that in-person visits were not safe for the children or supervisors given Mother's threats and the inability to obtain supervising staff due to the restraining orders against Mother. In her own testimony, Mother explained that she was participating in therapy and had no desire to either kill herself or harm the social worker.

At the conclusion of the hearing, the juvenile court granted a permanent restraining order on behalf of the social worker, but denied the Agency's request to preclude in-person visits. The court found that Mother was not a threat to her daughters and the Agency would have to make efforts to facilitate visits every other week. However, the court admonished Mother that she was being given "one chance" to prove she could have appropriate interactions and refrain from threatening the social workers. As the court explained, any additional threats could lead the court to conclude Mother may "do something physical in the presence of the kids" that would require the court to restrict future visits.

Approximately two weeks later, the Agency filed a new request to change the court's order pursuant to section 388 to again request that in-person visits be suspended until Mother's "mental health stabilizes and a secure guarded facility can be located." The agency explained it was seeking a change in the court's order because of Mother's continued threatening social media posts, which accused the court and the Agency of child sex trafficking. A new social worker filed a report detailing the threats by Mother. Mother had called and sent text messages to K.A.'s former teacher and her school principal making various threats and accusations. Throughout the month of May 2021, Mother's social media posts focused on her belief that the Agency is an "International Human Sex Trafficking ring" that had stolen her daughters. Mother had an outstanding arrest warrant for possession of methamphetamine. The Agency also noted that Agency offices did not have adequate security to accommodate a high-risk visitor like Mother.

The juvenile court found the Agency had made a prima facie showing, temporarily suspended in-person visits, and set the matter for an evidentiary hearing.

Thereafter, Mother sent text messages regarding the juvenile court's participation in sex trafficking and referred to a summer camp that K.A. attended as an " 'illegal' " camp where children were molested. During a video visit, Mother told K.A. that she was stolen and referred to "that child abduction court."

Mother's aggressive behavior began to affect her daughters. After the call ended, K.A. was crying and said she never wanted to talk to Mother again. S.G. and K.A. were crying when they returned to their caregiver's home and had trouble sleeping for a few nights after the visit. At the next visit, Mother again became angry and yelled at K.A. and said she had been

" 'stolen,' " " 'abducted,' " and " 'brainwashed.' " After the visit, K.A. was very upset. At another visit, Mother again told K.A. that she had been taken for money and was abducted. Mother began to talk to K.A. about sex trafficking, leading the social worker to terminate the visit. Throughout June 2021, Mother continued to post on social media, including photographs of guns. She also sent text messages referencing her gang affiliation and stated she was "reach[ing] out" to convicted "lifers in [P]elican [B]ay" to assist her. A sheriff's deputy searched her home and reported that although he did not locate the guns, he found methamphetamine and drug paraphernalia and two known gang members were visiting with Mother.

During the last video visit before the hearing, the social worker reported that Mother appeared "paranoid and aggressive." Mother yelled at the social worker and continued to make remarks about her daughters being sexualized and trafficked. After the visit, K.A. stated that she did not want to see or talk to Mother again. K.A. told her caregiver that she was scared that Mother would come take them away and hurt the caregiver.

In July 2021, the Agency filed a new request for a restraining order for the newest social worker after Mother sent a series of text messages threatening to kill the social worker.

In two orders—one for K.A. and one for S.G.—the juvenile court granted the section 388 petitions and suspended all visits between Mother and her daughters. The court explained that it could understand Mother's frustration and viewed her earlier behavior as "harassment that was brought on by the angst of the circumstances." The court further noted that it attempted to place the parties in a position where the Agency was required to facilitate visits, but where Mother had a corresponding duty to act in a positive way and show good faith. Although the court believed the Agency

7

could have done better in facilitating visits, it concluded that Mother's escalating threats "creates a situation where . . . there has to be a line drawn in the sand as to what can be acceptable or what can be explained away or justified."

Regarding the section 388 petitions, the court summarized the evidence as establishing "a bad situation across the board because it is a terrible loop of unfulfilled promises and expectations that feed on each other. The Agency is afraid and Mother is frustrated. The caregivers are expressing concerns because the contact with Mother manifests itself in regressive behavior with the two girls where the girls have actually for their young age articulated a great deal of angst and frustration and fear. And, yes, they love their mother. That is clear. Mother loves her children, but the circumstances have become unmanageable and the court has to protect not only the girls but has to protect the Agency workers that are continuously under threat by [Mother]."

Accordingly, the court found by clear and convincing evidence that the visits were detrimental to the children and that it would be in their best interest to suspend all visits.

Mother appealed.

## DISCUSSION

Mother contends the juvenile court committed a "mistake of law" by granting the section 388 petitions because the orders denied Mother her right to visits with her daughters. She appears to assert she has a fundamental right, as a matter of law, to continued visits with her daughters, regardless of her own actions. She contends this court should review the juvenile court's decision under the de novo standard of review.

8

Mother fails to establish that she has an absolute right to visits with her daughters at this stage in the proceedings. After a minor has been adjudged a dependent of the juvenile court, as in this case, the court may limit a parent's control over a child, including restrictions on the presumptive right to visitation if the child has been removed from the parent's physical custody. (§§ 361, subd. (a)(1), 362, subd. (a).) Although visits should generally be as frequent as possible, all orders for visitation must be "consistent with the well-being of the child" and may not "jeopardize the safety of the child." (§ 362.1, subd. (a)(1)(A)-(B).)

These statutes vest the juvenile court with discretion to terminate all visits if necessary to protect a child. (See, e.g., *In re Daniel C.H.* (1990) 220 Cal.App.3d 814, 838-839.) After a court has terminated reunification services and ordered a hearing pursuant to section 366.26 be held, it may suspend visitation between a parent and child if it finds, based upon a preponderance of the evidence, that visitation would be detrimental to the child. (§ 366.21, subd. (h); *In re Manolito L.* (2001) 90 Cal.App.4th 753, 760-762.)

Mother correctly notes that visitation is an important aspect of maintaining the parent-child relationship and suspending visitation will likely make it difficult for a parent to establish the existence of the beneficial parent-child relationship exception to adoption at a selection and implementation hearing. (See, e.g., *In re Hunter S.* (2006) 142 Cal.App.4th 1497, 1504 ["Courts have long recognized that, in the context of dependency proceedings, a lack of visitation may 'virtually assure[] the erosion (and termination) of any meaningful relationship' between mother and child."].) Mother relies on our Supreme Court's recent decision in *In re Caden C.* (2021) 11 Cal.5th 614 (*Caden C.*), to support her claim regarding the importance of

9

visitation in this context. (See, e.g., *id.* at p. 625 [parental-benefit exception applies "where the parent has maintained regular visitation and contact with the child"].) Although we agree with the importance of visitation and the Agency does not dispute that a parent's regular visitation with a minor is a relevant factor at a selection and implementation hearing, nothing in *Caden C.* supports Mother's claim to a fundamental, absolute right to visitation here.

Similarly, Mother relies on this court's decision in *In re Valerie A.* (2007) 152 Cal.App.4th 987 (*Valerie A.*) to suggest she has a due process right to visitation to preserve her ability to establish an exception to adoption, but that decision does not support her claim. In *Valerie A.*, we recognized the importance of visitation, but also noted that a parent's due process rights are " 'compromised' " only when visitation is suspended " 'through no fault' " of the parent. (*Id.* at p. 1006.) Here, the court did not arbitrarily suspend visits, but rather acted in response to Mother's own actions that were detrimental to her daughters. Mother fails to cite any authority establishing that she must be provided visits with her daughters following termination of reunification services even if her own actions led the juvenile court to conclude those visits would be detrimental to her daughters.

Thus, both the statutes applicable to juvenile dependency proceedings and existing case authority support a juvenile court's ability to limit or terminate visitation upon a proper showing that doing so is in the child's best interest. Mother fails to demonstrate that the juvenile court lacked such discretion and we see no basis to reverse the court's orders on this ground.

Mother also argues the juvenile court could not "cover up" the Agency's violation of court orders to provide visits by subsequently terminating all visitation. She asserts that "[t]he Agency's blatant refusal to follow the

10

court's repeat visitation orders during the majority of the dependency case" infringed on her fundamental rights.

The record, however, does not support Mother's assertion that the Agency violated the court's visitation orders. At the six-month review hearing, the juvenile court ordered only virtual visits but gave the Agency discretion to allow in-person visits. The Agency complied with this order and voluntarily facilitated an in-person visit.

Thereafter, in March 2021, Mother requested an order requiring additional in-person visits, which the court granted by ordering the Agency to provide one in-person visit. The Agency complied by facilitating an in-person visit that same month. Mother implies on appeal that this visit never occurred and that her last in-person visit was held in November 2020, but she provides no evidence to undermine the direct evidence in the record regarding the March 2021 in-person visit. Absent evidence to the contrary, we accept that the visit occurred and that the Agency complied with the juvenile court's order.

The juvenile court made subsequent orders requiring in-person visits, but each was closely followed by temporary orders suspending visits after the Agency filed section 388 petitions seeking such a suspension based on Mother's escalating threats and actions. Although there were short periods of time in which the juvenile court's orders requiring in-person visits were in effect before the Agency obtained temporary orders suspending visits, the record suggests that any absence of visits in these interim periods was not the result of the Agency's intentional violation of court orders. Instead, the juvenile court could reasonably conclude that the absence of visits in these intervals was caused by the Agency's need to assign a new social worker following the issuance of restraining orders prohibiting contact between

11

Mother and assigned social workers based on Mother's threats. Then, in May 2021, when a new social worker attempted to contact Mother regarding visitation, Mother did not answer her telephone and her voicemail box was full. Mother then resumed her threatening behavior, leading the Agency to seek a new court order to suspend visits. Thus, the record before the juvenile court establishes that any failure to provide visits was not the result of the Agency's "blatant refusal" to follow court orders, but rather due to Mother's own actions. We therefore reject Mother's claim that the Agency acted in bad faith and violated the court's visitation orders.

Alternatively, Mother contends the juvenile court abused its discretion in granting the section 388 petitions because the Agency failed to establish any changed circumstances or that it was in the best interests of her daughters to suspend visitation. Pursuant to section 388, subdivision (a)(1), "[a]ny parent or other person having an interest in a child who is a dependent child," may petition the court "for a hearing to change, modify, or set aside any order of court previously made or to terminate the jurisdiction of the court." The moving party must establish (1) there has been a change of circumstance or new evidence; and (2) the modification is in the child's best interests. (*Ibid.*; *In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) A petition under section 388 "is addressed to the sound discretion of the juvenile court, and its decision will not be overturned on appeal in the absence of a clear abuse of discretion." (*In re A.A.* (2012) 203 Cal.App.4th 597, 612.) The appellant has the burden on appeal to affirmatively show that the juvenile court abused its discretion. (*Ibid.*)

As applied to orders regarding visitation, this court has held that a juvenile court's finding of detriment to support a suspension of visits is reviewed under the substantial evidence standard of review. (*In re Mark L.*

12

(2001) 94 Cal.App.4th 573, 581, fn. 5 (*Mark L.*), disapproved on other grounds in *Conservatorship of O.B.* (2020) 9 Cal.5th 989, 1010, fn. 7.) As our Supreme Court has recently explained in a different context, we review the juvenile court's factual determinations to consider whether they are supported by substantial evidence, but review the juvenile court's balancing of those factual determinations to determine whether terminating visits would be in the child's best interest under the abuse of discretion standard of review.[4] (*Caden C.*, *supra*, 11 Cal.5th at pp. 640-641.)

Here, the juvenile court concluded that Mother's escalating threats and erratic behavior constituted a changed circumstance. Although Mother had made many threats and acted erratically before the section 388 petitions were filed, her behavior further escalated before the last hearing, leading the court to impose "a line drawn in the sand as to what can be acceptable or what can be explained away or justified." More importantly, the juvenile court focused on the real and substantial effect of Mother's most recent actions on her daughters as establishing a change in circumstance. Whereas Mother's earlier behavior mostly targeted the social workers, the court found Mother's actions during the latest visits "have upset and traumatized the two girls and that manifests itself . . . in emotional outbursts." As discussed above, the social worker's reports regarding the girls' adverse reaction to Mother's behavior supports these findings.

For the same reason, the record supports the juvenile court's conclusion that contact with Mother was detrimental to the girls, such that it was not in

---

[4] The Agency discusses in its respondent's brief that juvenile courts have applied a variety of standards in granting orders affecting visitation and appellate courts similarly offer varying standards for review. The juvenile court's rulings here are correct under any of these standards.

13

their best interests to continue visitation. (See *In re Jacob P.* (2007) 157 Cal.App.4th 819, 829 [observing in a different context that " 'The two standards [best interest and detriment] "are basically two sides of the same coin. What is in the best interests of the child is essentially the same as that which is not detrimental to the child.' "].) The social worker reported the children were frightened during their calls with Mother and had significant periods of time after visits during which they cried and were unable to sleep. The girls reported they were afraid of Mother and relieved when they did not have to visit with her. Moreover, K.A. expressed concern that Mother would harm her current caregiver and take her away from her current placement. This evidence supports the court's finding of detriment.

Mother suggests that instead of ordering a full suspension of all visits between Mother and her daughters, the court should have permitted visits to continue "in a therapeutic setting or by a neutral monitor, in person or by video." The record, however, establishes this was not possible: a social worker testified that given the multiple restraining orders against Mother, no visitation coach or visitation center would accept Mother and the Agency was concerned for the safety of any person who may be tasked with supervising visits.

Moreover, the juvenile court's orders suspending all visitation were focused on the effect of Mother's actions during visits on her daughters. Additional visits, either in person or by video, would present identical risks to the girls' emotional well-being. The juvenile court correctly determined all visitation would be detrimental to the girls and we will not second-guess that finding.

Considered altogether, the evidence establishes that Mother's behavior was causing significant harm to the girls in the form of emotional trauma. A

14

juvenile court may properly suspend visitation when "forced contact" might lead to emotional harm. (*Mark L., supra*, 94 Cal.App.4th at p. 581; *In re D.B.* (2013) 217 Cal.App.4th 1080, 1090.) Here, the emotional harm was detrimental to the girls such that the juvenile court reasonably concluded it was not in their best interests to continue visits with Mother. Accordingly, the juvenile court did not abuse its discretion in granting the Agency's section 388 petitions to protect the children by ending their visits with Mother.

DISPOSITION

The orders are affirmed.

GUERRERO, J.

WE CONCUR:

HALLER, Acting P. J.

AARON, J.